UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

SAMUEL D. ROSEN,                                    CIV. ACTION NO.:

     Plaintiff

v.

ALLEN BOZEK, CHARLOTTE
ENGLEMAN,
ROBERT GUIDA, BARBARA TATE,
AND JOHN DOES 1-5,

     Defendants,

and

THE CITY OF FORT LAUDERDALE,
additional party for relief
purposes only,

     Defendant.

                                 /

## VERIFIED COMPLAINT

Plaintiff Samuel D. Rosen, by his attorneys, hereby alleges as follows:

### Jurisdiction and Venue

1.    This is an action to remedy the misconduct of defendants in retaliating

against Plaintiff for his having exercised his rights to petition the government to

redress grievances, i.e., to bring lawsuit(s), rights secured to Plaintiff by the First

Amendment to the Constitution of the United States and by the Constitution of the

State of Florida.

2.      This Court's subject matter jurisdiction attaches pursuant to 28 U.S.C. §§ 1331, 1343(a), and this Court has supplemental jurisdiction over the non-federal claims asserted herein pursuant to 28 U.S.C. §1367.

3.      Venue is properly laid in this District (and division) pursuant to 28 U.S.C. §1391(b) in that Plaintiff resides in Miami-Dade County, all Defendants save Guida reside in this district, and Guida resides in northern Florida.

## THE PARTIES

4.      Plaintiff Samuel D. (a/k/a "Sandy") Rosen has long been a resident of Bal Harbour, Miami-Dade County.  After he retired, he embarked upon a project to apply mathematics to bidding system, used to play the game of bridge so as to improve them and to publish a book on same.  Toward this end, he spent thousands of dollars and over 2000 hours of his time in research and testing his precepts.

5.      Plaintiff, who does not play bridge for fun or recreation, proceeded through about a dozen drafts of his book and in or about 2007, identified Defendant the Fort Lauderdale Bridge Club ("FLBC") as the best place to conduct the necessary, pre-publication beta testing of his conclusions because it had among its regular players available to Plaintiff both as partners and opponents, the very best bridge players in South Florida.  Thus, five or sometimes six days a week, Plaintiff made the around trip (1 hour and 40 minutes) drive from his home to

FLBC.  Plaintiff has yet to finish the requisite beta testing for the reasons described below.

6.      Defendant Allen Bozek ("Bozek") has been the President of the FLBC and the Chair of its Board of Governors (its "Board") since January 1, 2012.

7.      Defendant Charlotte Engleman ("Engleman") was the President of FLBC and Chair of its Board throughout calendar year 2011.

8.      Defendant Robert Guida ("Guida") was the president of FLBC and Chair of its Board for two years to December 31, 2010.

9.      Defendant Barbara Tate ("Tate") has been a member of FLBC's Board since 2009, an officer since 2010, and for the past three years has been FLBC's vice president.

10.      FLBC claims to be a Florida not-for-profit corporation.  Since 1995, it has been engaged in a joint venture with the City of Fort Lauderdale in the operation of a bridge club on the City's land in Holiday Park.  Thus, the City determines the services to be offered by FLBC, including bridge classes, the times they are offered, the schedule of bridge games to be offered and the days and times thereof, and the City's right to use FLBC facilities for other purposes.  The city also dictates terms for the public to become "members" of FLBC.

11.    As both FLBC and the City have reportedly said their partnership here serves an important public function for the benefit of the residents of Fort Lauderdale and its environs and their activities are imbued with public benefit.

12.    The facilities and services including the sale of meals by FLBC are open to the public, not just members, and are in fact regularly enjoyed by non-members so that said facilities are a place of public accommodation.

13.    The City of Fort Lauderdale ("City") is an incorporated body politic of the State of Florida.  No monetary relief is sought against it here and it has been made a party hereto so that complete relief may be awarded to Plaintiff.

14.    The John Does 1-5 defendants are fictitious identifications of persons and entities whose true identity is presently unknown, but who are intended to be those who conspired with, directed, aided or abetted the conduct of the name Defendants alleged herein and may well include one or more attorneys.  When the true identifies of these Defendants becomes known, Plaintiff will seek leave to amend to include them as named parties herein.

## FACTS

15.    In February 2010, FLBC's then-manager Carl Cronrath, set out to have Plaintiff expelled for no legitimate reason.  Towards that end, Cronrath filed a Complaint against Plaintiff asserting a wholly fabricated charge of misconduct.

16. Three people – Guida, Mary Short (Board Member) and Bernace de Young (a Club member and an attorney who served as counsel to Guida) – conspired to rig FLBC's trial of Plaintiff and were successful; on February 22, 2010, Plaintiff was expelled in flagrant breach of FLBC's own By-Laws and Rules, and in violation of the procedural due process guarantee afforded all members of not-for-profit organizations pursuant to the Florida not-for-profit statute, Chapter 617.0607.

17. In May 2010, Plaintiff commenced suit in state court, and soon thereafter filed a Motion for Partial Summary Judgment of Liability on his claims of illegal expulsion.

18. On November 12, 2010, the Court held Plaintiff's Motion, heard that his expulsion violated FLBC's By-Laws and granted the Motion, awarding Plaintiff Summary Judgment of Liability on that claim and ordering that he be immediately re-instated to the full rights of membership. What followed in the next 2 ½ years and continuing to-date is a series of repeated threats and attempts to expel or otherwise punish Plaintiff for having exercised his right to bring suit – and succeeding.

19. The first act of retaliation occurred literally minutes after the Court signed the November 12 Order directing Plaintiff's reinstatement. Specifically, while still in the courtroom, Guida approached Plaintiff's attorney and threatened

5

that he would not allow Plaintiff's reinstatement and one way or another would bar it or immediately expel Plaintiff again.

20.     In addition, upon information and belief on November 12, Guida proceeded to FLBC from the Court and in concert with others, resorted to a familiar, previously used tactic in the Club's arsenal – the boycott.  Thus, when Plaintiff went to FLBC on November 13, each of the people he had previously played with him before his expulsion declined to resume playing with him save for Mrs. Mary de Marco, a 75 year old widow.

21.     Next, in April 2011, new President Engleman sent Plaintiff a letter advising that the Board – in Plaintiff's absence – had decided to expel him again. The reasons given therein were non-sensical and when asked to explain them under oath, in deposition, Engleman herself an attorney, could not do so and offered only that the letter had actually been written by an unidentified attorney (one of the John Doe Defendants herein).  Upon information and belief, that letter/threat was also in retaliation for Plaintiff's lawsuit.

22.     Next, in March 2012, new President Bozek sent plaintiff a letter advising that the Board had decided – in Plaintiff's absence – to strip him of his membership rights and this time, there was no doubt about the reason; Bozek's letter unabashedly advises that the reason for this action against Plaintiff was that he had brought suit. (see attached Exhibit A)

6

23.     Next, at various times, Ms. de Marco had been approached, including by FLBC Vice-President Tate, and told she should not play with Plaintiff because "he is suing the Club." Ms. de Marco resisted.

24.     On or about April, 2012, longtime FLBC member Alan Minton, who, upon information and belief, was acting in concert with the officials of FLBC, telephoned de Marco at her home late one night in an inebriated state and threatened her if she continued to play with Plaintiff.

25.     When de Marco told Plaintiff about the Minton threat and that she had complained to Bozek but with no success, Plaintiff went to Bozek and asked that Minton be brought up on charges and expelled or suspended.  Bozek refused to take any action against Minton.

26.     Not wanting de Marco to continue to be threatened, Plaintiff suggested – and de Marco agreed – that they play at a different bridge club and with one single exception for a special occasion, to this day, Plaintiff and de Marco have not returned to play at FLBC.

27.     The next act of retaliation came in January 13, 2013 when Bozek sent Plaintiff another letter advising that the Board had again decided to expel Plaintiff for suing and disingenuously noting that Plaintiff had played at FLBC only four times in the prior ten months, testament to the effectiveness of the boycott.  The letter also set a trial date upon which Plaintiff could come in and present his

7

"defense" before he was expelled.

28.    Thereafter, on February 26, FLBC filed a Chapter 11 Petition in Bankruptcy and Bozek advised Plaintiff, in writing, that his trial was not cancelled, that Bozek still intended to expel Plaintiff, but that Plaintiff's trial was merely postponed without date.

29.    The actions of FLBC as well as those of its agents and representatives, as alleged here, are the actions of the City as well in that said actions were undertaken by the City's joint venturer, ostensibly in furtherance of said joint venture.   The actions of Defendants alleged herein were carried out with actual malice, in fact and in law, and with the specific intent to punish Plaintiff for exercising his rights.

30.    As a result of the actions of Defendants described above, Plaintiff has and continues to suffer injury for which he seeks compensatory damages, punitive damages, attorney's fees, and a permanent injunction prohibiting Defendants from any further retaliatory conduct.   Plaintiff here seeks no monetary damages against the City but only that they be included in the injunction to be entered.

## FIRST CLAIM FOR RELIEF

31.    Each of the allegations of paragraphs 1 thorough 30 are realleged and incorporated herein.

8

32.    This is a claim under 42 U.S.C. §1983 against all Defendants for retaliatory conduct taken under color of state law by Defendants against Plaintiff, for his having exercised his 1st Amendment right to bring suit.  By the conduct alleged herein, Plaintiff's said rights have been violated.

## SECOND CLAIM FOR RELIEF

33.    Each of the allegations of paragraphs 1 through 32 are realleged and incorporated herein.

34.    This is a claim against all Defendants for violating Plaintiff's rights guaranteed by the Constitution of the State of Florida, i.e. the right to bring suit without retaliation.  By the conduct alleged herein, Plaintiff's said rights have been violated.

## THIRD CLAIM FOR RELIEF

35.    Each of the allegations of paragraphs 1 through 34 are realleged and incorporated herein.

36.    This is a claim against the individual Defendants for breach of their fiduciary duty owed to Plaintiff pursuant to the law of the State of Florida.

37.    By virtue of their positions as officers of FLBC – and therefore agents of the joint venture – Defendants Guida, Engleman, Tate, and Bozek owed a fiduciary duty to Plaintiff to treat Plaintiff fairly and to respect his rights and individual liberties, and to refrain from actions of retaliation against him for

9

exercising them.  Each of said Defendants breached that duty causing injury to Plaintiff and did so with actual malice, in fact and in law.

WHEREFORE, Plaintiff prays for Judgment as follows:

1.    On the first Claim:

    a. An award of compensatory damages in an amount to be determined at trial but not less than $25,000.00;

    b.  An award of punitive damages in an amount to be determined at trial, but not less than $300,000.00

    c.  A permanent injunction restraining and enjoining Defendants from further violation of plaintiff's rights.

    d.  An award to Plaintiff of costs and counsel fees incurred herein.

    e.  Any other or further relief to which Plaintiff may be entitled.

2.    On the Second Claim:

    a. An award of compensatory damages in an amount to be determined at trial but not less than $25,000.00;

    b.  An award of punitive damages in an amount to be determined at trial, but not less than $300,000.00

    c.  A permanent injunction restraining and enjoining Defendants from further violation of plaintiff's rights.

    d.  An award to Plaintiff of costs and counsel fees incurred herein.

e. Any other or further relief to which Plaintiff may be entitled.

3.     On the third Claim:

a.   An award of compensatory damages in an amount to be determined at trial but not less than $25,000.00;

b.   An award of punitive damages in an amount to be determined at trial, but not less than $300,000.00

c.   A permanent injunction restraining and enjoining Defendants from further violation of plaintiff's rights.

d.   An award to Plaintiff of costs and counsel fees incurred herein.

e.   Any other or further relief to which Plaintiff may be entitled.

Dated June _____, 2013.

**Samuel D. Rosen, Plaintiff**
10175 Collins Avenue, Apt. 502
Bal Harbour, FL 33154
Telephone No.: (305) 868-6096
Cellular No.: (917) 974-7588

*–and–*

**Andrew Jimenez, Esq.**
Jimenez Law Offices
**Of Counsel to Samuel D. Rosen**
100 SE 3rd Avenue, Suite 1514
Fort Lauderdale, FL 33394
Telephone: (954) 848-3111
Facsimile: (954) 252-4451
E-mail: Andrew@jimenezlawoffices.com

11

## VERIFICATION

State of Florida      )
                S.S.

County of Miami-Dade)

      Samuel D. Rosen, Plaintiff herein, hereby swears upon his oath that each of the foregoing allegations in his Verified Complaint is true and accurate to the best of his knowledge and belief.

                                Samuel D. Rosen

Sworn to and before me this 11 day of June, 2013.

Notary Public State of Florida
Caridad Martinez de Funcia
My Commission EE017190
Expires 10/20/2014

Notary Public

## DEMAND FOR JURY TRIAL

      Pursuant to Rule 38, Fed. R. Civ. P., Plaintiff hereby demands trial by jury of all claims asserted herein.

**Samuel D. Rosen, Plaintiff**

12



# FT. LAUDERDALE BRIDGE CLUB

700 N.E. Sixth Terrace • Fort Lauderdale, Florida 33304
954-761-1577

March 12, 2012

Samuel D. Rosen
10175 Collins Avenue
Apt. 502
Bal Harbour, FL 33154

Dear Mr. Rosen,

Pursuant to the legal actions that you have taken against the Fort Lauderdale Bridge Club (FTLBC) and various members of this club, you are hereby notified that you are no longer considered a member in good standing of the FTLBC.

Any subsequent action(s) that you may take against or for the FTLBC does not represent the club in any way and the FTLBC disavows any connection to or responsibility for any action(s) that you may take on your own.

Allen A. Bozek, President, Fort Lauderdale Bridge Club Board of Governors

This letter was approved by a majority vote of the Board of Governors on March 12, 2012

EXHIBIT A

**ACBL Sanctioned Games**

Monday - Saturday at 12:30 P.M. • Tuesday, Thursday and Saturday at 7:00 P.M. • Sunday at 1:00 P.M. and 6:30 P.M.