UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CIV. ACTION NO. 0:13-cv-61316-JIC

SAMUEL D. ROSEN,

    Plaintiff,

vs.

ALLEN BOZEK, CHARLOTTE
ENGLEMAN, ROBERT GUIDA,
BARBARA TATE, AND JOHN
DOES 1-5,

    Defendants,

and

THE CITY OF FORT LAUDERDALE,
Additional party for relief purposes only,

    Defendant.
_____/

## DEFENDANT CITY OF FORT LAUDERDALE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED VERIFIED COMPLAINT

Defendant, CITY OF FORT LAUDERDALE (the "City"), by and through its undersigned counsel and pursuant to Southern District Local Rule 7.1, files its Reply in Support of Its Motion to Dismiss Plaintiff's Amended Verified Complaint, and states as follows:

Plaintiff's Response to Defendants' Motions to Dismiss Plaintiff's Amended Verified Complaint, with Incorporated Memorandum of Law [DE # 20] ("Response") attempts to insert new allegations that were not made in Plaintiff's Amended Verified Complaint [DE # 4] ("Complaint"). However, even Plaintiff's novel allegations fail to establish that Plaintiff has stated, or can state, any valid claim against the City. Plaintiff's Response fails to overcome the arguments in the City's Motion to Dismiss [DE # 5]. Accordingly, Plaintiff's Complaint should be dismissed with prejudice for the reasons set forth in the City's Motion to Dismiss and herein. The City joins in the arguments in the Co-Defendants' Reply to Plaintiff's Response [DE # 21].

I.  **Plaintiff's Argument Regarding the Pleading Standards Applicable to His Joint Venture Allegations Is Incorrect.**

Although Plaintiff relies heavily on Bell Atlantic v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), in arguing that his allegations in the Complaint are sufficient, neither of those cases involved a joint venture claim. Therefore, neither case provides any basis to support Plaintiff's argument that the general pleading principles set forth in those cases apply to either eliminate or modify the pleading requirements for a claim based on a joint venture theory, including the requirement of a written document evidencing such joint venture.

Although Plaintiff asserts in his Response that all of his allegations "must be accepted as true" (Response, p. 3), in Iqbal, the Supreme Court stated that in considering a motion to dismiss, allegations that are "no more than conclusions, are not entitled to the assumption of truth." 556 U.S. at 679. Moreover, although Plaintiff contends that he "need not allege specific facts" (Response, p. 2), the Iqbal Court stated that "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679 (emphasis added). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. at 678 (quoting Twombly, 550 U.S. at 555, 557). Rule 8, Federal Rules of Civil Procedure, "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79. Plaintiff's allegations in the Complaint regarding "joint venture" are no more than mere conclusions and are unsupported by necessary underlying factual allegations. Therefore, under Twombly and Iqbal, such allegations are not entitled to the assumption of truth.

Plaintiff proposes that three of the essential elements to establish a joint venture as set forth in Burger v. Hartley, 896 F. Supp. 2d 1157 (S.D. Fla. 2012), are "inapplicable in the current case" (Response, pp. 4-5) in an effort to avoid the inescapable fact that "profits and losses can't be shared" between two nonprofit entities as he acknowledges. However, the court in Burger set forth no such exception to any of those three required elements, much less all such elements, nor has plaintiff cited a single case in support of this novel proposition.

Plaintiff's reliance on Focus on the Family v. Pinellas Suncoast Transit Authority, 344 F.3d 1263 (11th Cir. 2003), and the case it quotes, Willis v. University Health Services, Inc., 993 F.2d 837 (11th Cir. 1993), is misplaced. Plaintiff quotes language from these cases which sets

2

forth the three primary tests used to determine whether "state action" exists. In the excerpt quoted in Plaintiff's Response (p. 5), the Eleventh Circuit noted that the tests are used to "'determine on a case-by-case basis whether sufficient state action is present <u>from a non-state actor</u> (defendant] to sustain a section 1983 claim.'" <u>Focus</u>, 344 F.3d at 1277 (quoting <u>Willis</u>, 993 F.2d at 840) (emphasis added). The <u>Willis</u> court stated that "[t]his circuit has noted that these three primary tests apply in cases where a party seeks to hold a <u>private actor</u> liable under the state action doctrine." 993 F.2d at 840 n.3 (emphasis added).

Thus, neither <u>Focus</u> nor <u>Willis</u> in any way reduces or eliminates any of the five essential elements required to establish a joint venture set forth in <u>Burger</u>. Rather, the cases address the very different issue of whether the actions of a private entity can be considered "state action" as necessary to support the "under color of state law" element of a § 1983 claim. <u>See Focus</u>, 344 F.3d at 1276 n.4. In <u>Willis</u>, the Eleventh Circuit applied the "nexus/joint action test" to determine whether "state action" existed to support a registered nurse's § 1983 claim against her former employer, a private, nonprofit health services corporation that operated a hospital under a lease agreement with a public hospital authority. Despite the facts that the lease obligated the private entity to "serve the general public," relinquished the governmental entity of all liabilities, mandated that the private party maintain and repair the leased property at its own expense, required it to maintain insurance, and demanded that the private entity hold the governmental entity harmless from any court action, the <u>Willis</u> Court found that the private entity and governmental entity were "not so intertwined in a symbiotic relationship as to satisfy the nexus/joint action test." 993 F.2d at 841.[1]

In this case, unlike in <u>Focus</u>, the Plaintiff is not seeking to hold the City responsible for the actions of private individuals as such, since the Plaintiff seeks no relief against the City, but only seeks relief against the private individual Defendants. It is only the actions of the private individual Defendants and the Fort Lauderdale Bridge Club, Inc. ("FLBC") which Plaintiff

---

[1] The terms of the Lease Agreement proffered by Plaintiff are similar to those highlighted by the <u>Willis</u> Court, and the <u>Willis</u> Court's holding indicates the "joint action" test would not be satisfied by the Lease Agreement in this case. In addition, the Lease Agreement itself contradicts the allegation in paragraph 10 of the Complaint that the City "dictates the terms for the public to become 'members' of FLBC." The Lease Agreement proffered by Plaintiff, read in light of the <u>Willis</u> case, demonstrates that any further attempt by Plaintiff to amend his pleading on a "joint action" theory would be futile. Accordingly, this Honorable Court should dismiss Plaintiff's Complaint with prejudice as to the City.

alleges have violated his constitutional rights. As noted by the Focus court, the purpose of establishing a nexus between a governmental entity and the challenged action of a private party "is to assure that constitutional standards are invoked only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains. The importance of this assurance is evident when, as in this case, the complaining party seeks to hold the State liable for the actions of private parties." 344 F.3d at 1277-78. The Focus court further stated that "our precedents indicate that a State normally can be held responsible for a private decision <u>only when it has exercised coercive power or has provided such significant encouragement, either overt or covert that the choice must in law be deemed to be that of the State</u>. Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment." Id. at 1278.

In any event, this inquiry of whether there was sufficient evidence of state action is quite different from the separate inquiry of the sufficiency of allegations of joint venture, which is what Plaintiff actually attempts to allege in the Complaint. However, even under the state action test, the allegations before this Court, even including the Lease Agreement attached to Plaintiff's Response (which is not part of his Complaint), are entirely insufficient to demonstrate that the actions of the FLBC or its officers in allegedly retaliating against Plaintiff for having filed suit against them by barring him from membership was necessarily attributable to a decision by the City. Nor can it be said that there was a symbiotic relationship between the City and the FLBC and its officers of the type which "must involve the specific conduct of which the Plaintiff complains" as required by the Supreme Court. See Focus, 344 F.3d at 1278. Rather, the facts alleged, along with the provisions of the Lease Agreement, clearly establish that this situation is similar to that presented in the case of Patrick v. Floyd Medical Center, 201 F.3d 1313, 1316 (11th Cir. 2000), in which the court held that "[t]here [was] no evidence . . . that [the state] had anything to do with [the private entity's] decision to deny [the plaintiff's] application."

With specific regard to the three state action tests in Focus, the operation of a bridge club clearly fails to satisfy the public function test which involves "instances where private actors are performing functions 'traditionally the exclusive prerogative of the state.'" Focus, 344 F.3d at 1277. Nor can it be said that the state compulsion test has been met, since there is no allegation, nor even any provision in the Lease Agreement which indicates that the City "has coerced or at least significantly encouraged the action alleged to violate the Constitution" as required by that

4

test. Id. Turning finally to the nexus/joint action test, such test applies only where "[t]he private actor is merely a surrogate for the state." Id. at 1278-79. That cannot be found based upon Plaintiff's allegations, even when supplemented by the Lease Agreement.

II. **Plaintiff's Attempt to Characterize His Joint Venture Agency Theory Allegations as Allegations Supporting the "Joint Action" Test for Establishing State Action Fails.**

Plaintiff alleges in the Complaint that the FLBC "has been engaged in a joint venture, evidenced by written documents, with the City." (Complaint, ¶ 10). Plaintiff further alleges that "[t]he actions of FLBC as well as those of its agents and representatives, as alleged here, are the actions of the City as well in that said actions were undertaken by the City's joint venturer, ostensibly in furtherance of said joint venture." (Complaint, ¶ 30). Despite such explicit allegations indicating Plaintiff's attempt to plead joint venture as an agency theory, Plaintiff contends that the City's argument that Plaintiff failed to plead the required elements to state a joint venture claim "misses the mark entirely and fails to understand how joint action is determined for purposes of § 1983 liability." See Response [DE # 20], p. 4. It is Plaintiff's Response that "misses the mark" in this regard, because Plaintiff is the one who attempted to plead a "joint venture" agency theory in his Complaint without alleging the requisite elements.

Plaintiff's argument in the Response that his "joint venture" allegations were, instead, allegations of "joint action" for the purpose of establishing the state action necessary to support a § 1983 claim does not pass scrutiny. In the first place, Plaintiff's Complaint repeatedly uses the term "joint venture" and never uses the terms "joint action" or "state action." More fundamentally, although much of Plaintiff's Response is devoted to the issue of state action, and particularly the "joint action" test for establishing state action, that issue is not relevant to whether Plaintiff has stated a valid § 1983 claim against the City.

In order to sustain a § 1983 claim, Plaintiff must prove two elements: (1) that the act or omission deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person or entity acting under color of state law. See, e.g., Holmes v. Crosby, 418 F.3d 1256, 1258 (11th Cir. 2005). Where private parties are sued under § 1983, courts must determine whether such private parties are "state actors" because § 1983 "only provides for claims to redress State action." See Rayburn v. Hogue, 241 F.3d 1341, 1347 (11th Cir. 2001). The "nexus/joint action test" is one of the alternative tests which must be satisfied "to hold that private parties . . . are State actors."

Rayburn, 241 F.3d at 1347; see also Brock v. Watergate Mobile Home Park Ass'n, Inc., 502 So. 2d 1380, 1381 (Fla. 4th DCA 1987) (noting that the "state involvement" or "nexus" test is one of the tests used "in determining whether conduct performed by private persons or groups constitutes 'State action.'") (emphasis added).

Because "state action" is only at issue with respect to private parties who are sued under § 1983, the "joint action" test for establishing whether state action is present does not apply to a governmental entity such as the City. Furthermore, even though the state action test is irrelevant to the City, Plaintiff does not plead allegations which satisfy the "nexus/joint action test" for establishing state action in any event. The Eleventh Circuit has recognized that "private conduct is fairly attributable only when the [S]tate has had some affirmative role, albeit one of encouragement short of compulsion, in the particular conduct underlying a claimant's civil rights grievance." NBC, Inc. v. Commc'ns Workers of Am., 860 F.2d 1022, 1025 n.4 (11th Cir. 1988) (emphasis added). In the present case, Plaintiff has not pled that the City participated in the particular conduct which Plaintiff asserts violated his constitutional rights.

"To the extent that a § 1983 claim is based on an alleged 'joint participation' or 'conspiracy' between private actors and public actors, a bare assertion of a 'conspiracy' is insufficient, and a plaintiff must plead enough factual matter to plausibly suggest that an agreement was made to deprive them of their constitutional rights." McFayden v. Duke Univ., 786 F. Supp. 2d 887, 928 (M.D.N.C. 2011), reversed in part on other grounds, Evans v. Chalmers, 703 F.3d 626 (4th Cir. 2012); see also Howard v. Food Lion, Inc., 232 F. Supp. 2d 585, 597 (M.D.N.C. 2002) (holding that in a conspiracy claim under § 1983, a plaintiff "must allege both a mutual understanding to achieve some unconstitutional action reached by the private and state defendants and some factual assertions suggesting a meeting of the minds," and that "[w]hen a complaint contains merely a vague allegation of conspiracy, it cannot withstand a motion to dismiss"). In this case, Plaintiff has not alleged any conspiracy or agreement by the City to violate Plaintiff's constitutional rights. Plaintiff's generalized "joint venture" allegations are insufficient to establish "joint action," even if that test applied to the City (which it does not).

The Eleventh Circuit has made clear that whether a government entity can be held responsible under § 1983 for another party's conduct and whether state action exists are separate inquiries. "The fact that [a public entity] may be liable for the acts of [a private entity] under an agency theory does not automatically transform [the private entity's] action into state action. As

the Supreme Court has held, a local government entity may not be sued under § 1983 for an injury inflicted solely by its agent." Patrick, 201 F.3d at 1316-17 (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978)). In other words, a government entity "cannot be held liable under section 1983 on a respondeat superior or vicarious liability basis." Harvey v. Harvey, 949 F.2d 1127, 1129 (11th Cir. 1992) (citing Monell). "Rather, it is only 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.'" Patrick, 201 F.3d at 1317 (quoting Monell, 436 U.S. at 694). Because the City cannot be held vicariously liable under § 1983 for the conduct of another entity, including an alleged joint venturer, Plaintiff cannot state a § 1983 claim against the City even if Plaintiff could ultimately establish "joint action" for purposes of characterizing the FLBC or individual Defendants as state actors. See McFayden, 786 F. Supp. 2d at 929 n.18 (noting that allegations that stated a claim that a private person was acting under color of state law, "[did] not impute liability or 'state action'" to another party).

In Kent Island Joint Venture v. Smith, 452 F. Supp. 455 (D. Md. 1978), the plaintiff argued that state officials could be liable under § 1983 for injury resulting from a conspiracy, relying on cases holding that a private person may be sued under § 1983 when acting in conspiracy or collusion with state officials as acts of the private individuals under such circumstances may be deemed to have been done under color of state law. Id. at 459. The district court, however, stated that the cases' "borrowing of traditional concepts of conspiracy law was a limited one, undertaken solely to satisfy the § 1983 requirement that state action be involved." Id. at 459-60. The court further stated, "[i]n neither case [relied on by the plaintiff], nor any other case known to this Court, has it been held or even suggested that a defendant would be liable under § 1983 for the individual acts of an alleged co-conspirator. Any such ruling would be contrary to the great weight of authority rejecting other forms of vicarious liability, such as respondeat superior, in actions brought under § 1983." Id. at 460. Accordingly, the court in Kent Island Joint Venture concluded that "each defendant in this case may be held liable, if at all, only for those acts that he personally undertook and not for the acts of any co-defendant." Id. The same holds true in this case, and the City cannot be held liable under § 1983 for any of the alleged acts of the FLBC or the individual Co-Defendants.

### III. Plaintiff Has Not Pled a Sufficient Basis to Impose § 1983 Liability Against the City.

Plaintiff argues in the Response that the Complaint adequately pleads a basis for imposing § 1983 liability against the City "due to its interdependent relationship with individual Defendants and FLBC." (Response, p. 6). Although Plaintiff disclaims that he is attempting to hold the City under a vicarious liability theory, Plaintiff nevertheless argues he has adequately pled a basis for the City to be held liable for the alleged actions of the FLBC because "the Complaint alleges that FLBC and City operate in ways resembling a joint venture or partnership." (Response, p. 6). Plaintiff also claims that the Complaint alleges "particular facts as to the City's joint action with FLBC" and argues that such allegations are sufficient to state a § 1983 claim against the City. (Response, pp. 6-7). Plaintiff's arguments in this regard are completely without merit and exhibit a fundamental misunderstanding about the place of "joint action" allegations in a § 1983 analysis, as explained in detail above. Even if the allegations in Plaintiff's Complaint were deemed sufficient to establish "joint action" or an "interdependent relationship" between the City and FLBC and the individual Defendants, such allegations would only establish state action on the part of FLBC and the individual Defendants; they would not be sufficient to state a § 1983 claim against the City. Indeed, such allegations would not even be relevant to a claim against the City, because state action, and thus the "joint action" test, is only applicable to § 1983 claims directed against private parties.

Plaintiff's reliance on Burton v. Wilmington Parking Authority, 365 U.S. 715 (1961), is misplaced. In the first place, Burton does not involve a § 1983 claim, and, in fact, § 1983 is not even referenced in the Burton decision. Rather, in Burton, the Supreme Court considered whether a private restaurant's act in refusing to serve the appellant, solely because of his race, constituted "state action" for purposes of a claim under the Equal Protection Clause of the Fourteenth Amendment because the restaurant leased its premises from a state agency. Id. at 716-17. The Court determined "that the [restaurant's] exclusion of appellant under the circumstances shown here was discriminatory state action in violation of the Equal Protection Clause." Id. at 717. The Burton case certainly does not eliminate the well-established principles that a government entity cannot be held vicariously liable under § 1983 and that, in order to state a § 1983 claim against a municipal entity, the plaintiff must allege the existence of a municipal policy or custom which was the moving force behind the alleged constitutional violation.

8

Moreover, the Supreme Court has more recently stated that "Burton was one of our early cases dealing with 'state action' under the Fourteenth Amendment, and later cases have refined the vague 'joint participation' test embodied in that case." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 57 (1999). The Court noted that cases decided since Burton "have established that 'privately owned enterprises providing services that the State would not necessarily provide, even though they are extensively regulated, do not fall within the ambit of Burton.'" Id. (quoting Blum v. Yaretsky, 457 U.S. 991, 1011 (1982)).[2]  Significantly, the Sullivan Court rejected the argument, based on Burton, that private insurers, which were extensively regulated by the State, should for that reason be deemed state actors under a "joint participation" theory.

### IV.     Plaintiff's Second Claim for Relief Does Not State a Claim Against the City.

Although Plaintiff's Complaint did not identify the specific provision of the Florida Constitution which purportedly supports his Second Claim for Relief by providing a "right to bring suit without retaliation," Plaintiff argues in the Response (p. 7) that this right derives from Article 1, Section 21, of the Florida Constitution. However, the case cited in the City's Motion to Dismiss and discussed in Plaintiff's Response, Yachting Promotions, Inc. v. Broward Yachts, Inc., 792 So. 2d 660 (Fla. 4th DCA 2001), held that the provision Plaintiff relies on "does not create an independent civil cause of action." Id. at 664. Plaintiff's discussion of "state action" language in Yachting Promotions is irrelevant, because that court's discussion of state action was with respect to whether a private entity could be liable and in no way supports a claim for relief against the City. Moreover, there is no suggestion in Yachting Promotions that even if state action was found to exist, that would support a claim for violation of Article 1, Section 21 of the Florida Constitution. Indeed, the court expressly held that Article 1, Section 21 only protects rights which existed at common law, and there was no common law duty not to retaliate against someone for exercising his right of access to the courts. Id. at 663. Thus, Plaintiff's Response fails to establish that the Second Claim for Relief pleads a viable claim against the City.

### V.      Plaintiff Fails to Demonstrate that the City Is a Necessary Party.

Plaintiff argues that the City is a necessary party based on the alleged "joint relationship among the individual Defendants, FLBC, and City." (Response, p. 8). However, Plaintiff fails

---

[2] The provision of a bridge club is clearly not service that the State would necessarily provide such that the Burton case would compel the inclusion of the City as a Defendant in this action.

9

to demonstrate that it is necessary to include the City as a party Defendant merely to establish "joint action" such that the private parties would be deemed state actors. Indeed, Plaintiff has cited no authority indicating that a government entity must be a party defendant to establish state action by a private party. Accordingly, Plaintiff's argument that the City is a necessary party fails. Plaintiff's assertion that the allegations in the Complaint "establish a plausible claim of § 1983 liability against the City" (Response, p. 8) is also completely erroneous, because Plaintiff's putative § 1983 claim is based on alleged vicarious liability for the conduct of FLBC and/or the individual Defendants via a "joint venture" agency theory and Plaintiff has not alleged any policy, practice, or custom of the City which caused the alleged constitutional violation. Plaintiff's assertion that he "need only allege that the City was jointly engaged in the alleged violation" (Response, p. 8) simply does not reflect the law concerning what is necessary to state a § 1983 claim against a municipality, and Plaintiff has cited no case law indicating otherwise.

## VI.     Plaintiff Should Not Be Given Leave to Amend His Pleading as to the City.

Plaintiff requests that, if his Complaint is dismissed, he be given leave to amend his Complaint to attach "the joint venture agreement between the parties, euphemistically denominated a 'lease.'" (Response, pp. 10-11). However, the "Lease Agreement" attached as Exhibit "A" to the Response [DE # 20-1] refutes Plaintiff's attempt to characterize the agreement as a "joint venture agreement." The Lease Agreement is simply what its name suggests – an agreement between the City and the FLBC for the FLBC to rent land from the City. The Lease Agreement contains standard provisions in property leases and addresses subjects such as the demised premises; payment of utilities; use, construction, and operation of demised premises; the City's right of use; ownership of improvements; operation, maintenance, and repairs; sale, assignment, and subletting; insurance requirements; events of default; the City's right of inspection; and so on. There are no provisions in the Lease Agreement establishing the elements of a joint venture, particularly a right to share in the profits and a duty to share in any losses. Plaintiff's attempt to transform a standard Lease Agreement into a "joint venture" contract is futile, and Plaintiff should not be given leave to amend his Complaint to allege that the Lease Agreement represents a joint venture contract sufficient to state a joint venture agency claim.

Dated: October 4, 2013

Respectfully submitted,

/s/ Clark J. Cochran, Jr., Esq.

Clark J. Cochran, Jr., Esquire
Florida Bar No. 179614
Jeffery R. Lawley, Esq.
Florida Bar No. 0596027
**ftl-pleadings@bclmr.com**
SunTrust Center – 6th Floor
515 East Las Olas Boulevard
Fort Lauderdale, Fl 33301
Telephone – 954-764-7150
Fax – 954-764-7279

**CERTIFICATE OF SERVICE**

WE HEREBY certify that a copy of the foregoing was electronically submitted to the Clerk and electronically mailed this 4th day of October, 2013, to the following:

Andrew Jimenez, Esq.
Jimenez Law Offices, P.A.
Counsel for Plaintiff
100 SE Third Avenue, Suite 1514
Fort Lauderdale, FL 33394
954-848-3111
Fax 954-252-4451
andrew@jimenezlawoffices.com

Carl W. Christy, Esq.
Daniel J. Santaniello, B.C.S.
Luks, Santaniello, Petrillo & Jones
Counsel for Individual Defendants
110 SE 6 Street, 20th Floor
Fort Lauderdale, FL 33301
954-761-9900
Fas 954-761-9940
luksfll-pleadings@ls-law.com

By____/s/Clark J. Cochran, Jr._____
Clark J. Cochran, Jr., Esquire